UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Plasticware, LLC,

                              Plaintiff,

        -v-

Flint Hills Resources, LP,

                              Defendant.

Case No. 10-CV-6650 (KMK)

<u>OPINION AND ORDER</u>

<u>Appearances:</u>

Ryan Scott Karben, Esq.
Law Office of Ryan Scott Karben
Monsey, NY
*Counsel for Plaintiff*

James F. Murphy, Esq.
Jeffrey Michael Pincus, Esq.
Lewis Johs Avallone Aviles, LLP
Melville, NY
*Counsel for Defendant*


KENNETH M. KARAS, District Judge:

        Plasticware, LLC ("Plaintiff") alleges that Flint Hills Resources, LP ("Defendant") is

liable for breach of contract, tortious interference with business relations, and tortious

interference with contract.  Defendant moves to dismiss, pursuant to Federal Rule of Civil

Procedure 12(b)(6), the tortious interference with business relations claim and the tortious

interference with contract claim.  For the reasons stated herein, the Motion is granted.

I. Background

A.  Factual History

For purposes of deciding this Motion, the Court assumes the following allegations in Plaintiff's Complaint to be true.  Plaintiff and Defendant have had a business relationship since November 2009.  (Compl. ¶ 7.)  In that time Plaintiff, which produces deli containers, has purchased "hundreds of thousands of dollars" of polypropylene products from Defendant.  (*Id.* ¶¶ 5-9.)

On June 16, 2010, Plaintiff placed four orders with Defendant, totaling 800,000 pounds of resin (the "June Orders").  (*Id.* ¶ 15.)  Defendant shipped the first order via rail on June 17, 2010, which Plaintiff was to receive on July 1, 2010.  (*Id.* ¶ 16.)  Plaintiff alleges that on July 1, 2010, Defendant "maliciously instructed" the railroad company, CSX, not to deliver the goods to Plaintiff, but instead to hold them at the terminal, and then ship them elsewhere.  (*Id.* ¶ 19.) Upon learning this, Plaintiff contacted Defendant and demanded delivery of the order being held, as well as the other three orders.  (*Id.* ¶¶ 20-21.)  Plaintiff alleges that it informed Defendant "that if the deliveries were not made it would cause huge losses to [Plaintiff]'s business as all its customers were relying on the shipments."  (*Id.* ¶ 22.)

Defendant refused to deliver the June Orders.  (*Id.* ¶ 23.)  Plaintiff alleges that as a result, it "had to mitigate and suffered excessive damages due to the loss of production and [its] inability to market the products and provide the containers," because it had already "considered the shipped goods as part of its inventory . . . and promised its customers it would supply the

goods." (*Id.* ¶¶ 24-25.)[1]

Plaintiff brings three claims against Defendant in the instant action.  First, Plaintiff claims that Defendant breached its contract with Plaintiff for the June Orders.  (*Id.* ¶ 33.) Second, Plaintiff claims that Defendant tortiously interfered with Plaintiff's existing business relations when it refused to deliver the June Orders.  (*Id.* ¶ 37.)  Third, Plaintiff claims that Defendant tortiously interfered with Plaintiff's contracts with its customers when it refused to deliver the June Orders.  (*Id.* ¶¶ 41-43.)

B.  Procedural History

Plaintiff filed its Complaint on August 6, 2010, in Supreme Court of the State of New York, Rockland County.  (Notice of Removal ¶ 2 (Dkt. No. 1).)  The case was removed without opposition to this Court on September 9, 2010, pursuant to 28 U.S.C. §§ 1332(a) and 1441.  (*Id.* ¶ 9.)  Defendant served its Motion to Dismiss on Plaintiff on January 7, 2011, and the Motion was fully submitted on March 11, 2011.  (Dkt. No. 20.)  The Court conducted a status conference on March 15, 2012 to confirm that it had subject matter jurisdiction over the case.[2]

_____

[1] Naturally, Defendant paints a different picture, claiming that "[a]lmost from the outset of their business relationship in 2009," Plaintiff was "chronically late" in paying Defendant, and that as of July 2010, the "unpaid and past due balance was $266,412.90." (Mem. in Supp. of Motion to Dismiss Pl.'s Second and Third Claims 1.)  When Plaintiff placed the June Orders, Defendant demanded adequate assurance of performance, pursuant to Uniform Commercial Code ("UCC") § 2-609, which Plaintiff refused to provide.  (*Id.*)  As a result, pursuant to UCC § 2-705, Defendant stopped the shipments in transit.  (*Id.*)  Defendant states that it "did not contact any of [Plaintiff]'s customers, or otherwise do anything to interfere with [Plaintiff]'s contracts or business relations."  (*Id.*)  Of course, the Court does not credit or even consider Defendant's version of the facts in deciding this Motion.

[2] Plaintiff is incorporated in Delaware and is a citizen of Delaware for diversity purposes. (Compl. ¶ 1; Notice of Removal ¶ 6.)  Defendant is organized under the laws of Delaware, but is a citizen of Kansas for diversity purposes, as its ultimate owner and member is a citizen of Kansas.  (Notice of Removal ¶ 7.)  *See Turtur v. Rothschild Registry Int'l, Inc.*, 26 F.3d 304, 307

## II. Discussion

### A. Standard of Review

#### 1. Rule 12(b)(6)

"On a Rule 12(b)(6) motion to dismiss a complaint, the court must accept a plaintiff's factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." *Gonzalez v. Caballero*, 572 F. Supp. 2d 463, 466 (S.D.N.Y. 2008); *see also Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010) ("We review the district court's grant of a Rule 12(b)(6) motion to dismiss de novo, accepting all factual claims in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor."). "In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration, citations, and internal quotation marks omitted). Instead, the Supreme Court has emphasized

---

(2d Cir. 1994) ("[F]or diversity purposes, a limited partnership is a citizen of each jurisdiction in which any of its limited partners is a citizen."); *see also Handelsman v. Bedford Vill. Assocs. Ltd. P'ship*, 213 F.3d 48, 52 (2d Cir. 2000) (noting that "for purposes of diversity jurisdiction, limited partnerships have the citizenship of each of its general and limited partners" (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990))).

that "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563.  A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  If a plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." *Id.*; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))).

### 2. State Law Claims

Because federal jurisdiction in this case is based on diversity of citizenship, the conflict-of-law rules of the forum state, New York, determine which state's law governs.  *See Cantor Fitzgerald Inc. v. Lutnick*, 313 F.3d 704, 710 (2d Cir. 2002).  "Here, the [P]arties' briefs assume that New York law controls this issue, and such implied consent is sufficient to establish choice of law."  *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 61 (2d Cir. 2004) (alterations and internal quotation marks omitted); *see also Texaco A/S (Denmark) v. Commercial Ins. Co. of Newark, NJ*, 160 F.3d 124, 128 (2d Cir. 1998) (noting that "where the parties have agreed to the application of the forum law, their consent concludes the choice of law inquiry" (internal quotation marks omitted)).

B. Analysis

1. Tortious Interference with Business Relations

Plaintiff alleges that Defendant "interfered with [Plaintiff]'s relationship with its customers by use of dishonest, unfair and improper means" when it refused to deliver the June Orders to Plaintiff. (Compl. ¶ 37.) Plaintiff does not identify any specific third-parties with which it has business relations, but merely refers to "existing customers," (*id.* ¶ 38), and "major companies" with which it has "strong business relationship[s]," (*id.* ¶ 36). Plaintiff claims that as a result of Defendant's "unlawful means and self interest," Plaintiff suffered more than $2 million in damages. (*Id.* ¶¶ 38-39.) Defendant moves to dismiss this claim, arguing that Plaintiff "does not identify any specific prospective business relationship and does not set forth any intentional, wrongful or malicious act by Defendant directed toward [Plaintiff] or any of [Plaintiff]'s customers." (Mem. in Supp. of Motion to Dismiss Pl.'s Second and Third Claims ("Def.'s Mem.") 4.)

To state a claim for tortious interference with business relations, a plaintiff must allege that: "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 132 (2d Cir. 2008). "[C]onduct constituting tortious interference with business relations is, by definition, conduct, directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship." *Armored Grp., LLC v. Homeland Sec. Strategies, Inc.*, No. 07-CV-9694, 2009 WL 1110783, at *2 (S.D.N.Y. Apr. 21, 2009) (citing *Carvel Corp. v. Noonan*, 818 N.E.2d 1100, 1104 (N.Y. 2004)).

There are several fatal deficiencies in Plaintiff's Complaint.  First, Plaintiff has not adequately alleged *specific* business relationships with which Defendant allegedly interfered. *See AIM Int'l Trading, L.L.C. v. Valcucine S.p.A., IBI, L.L.C.*, No. 02-CV-1363, 2003 WL 21203503, at *6 (S.D.N.Y. May 22, 2003) (noting that "[a] properly pleaded complaint . . . must allege relationships with *specific* third parties with which the respondent interfered" (emphasis added)); *Four Finger Art Factory, Inc. v. Dinicola*, No. 99-CV-1259, 2000 WL 145466, at *7 (S.D.N.Y. Feb. 9, 2000) (dismissing tortious interference with business relations claim where "the complaint fail[ed] to identify any other relationships with any other *specific* parties with which the defendants interfered" (emphasis added)); *Envirosource, Inc. v. Horsehead Res. Dev. Co.*, No. 95-CV-5106, 1996 WL 363091, at *14 (S.D.N.Y. July 1, 1996) (noting that "[a] general allegation of interference with customers without any sufficiently particular allegation of interference with a *specific contract or business relationship* will not withstand a motion to dismiss" (emphasis in original) (internal quotation marks omitted)).

Second, Plaintiff only alleges conduct directed at itself, not any conduct Defendant directed at Plaintiff's customers or other businesses.  This is also fatal to Plaintiff's cause of action here.  *See Carvel*, 818 N.E.2d at 1104 ("[C]onduct constituting tortious interference with business relations is, by definition, conduct directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship."); *see also G.K.A. Beverage Corp. v. Honickman*, 55 F.3d 762, 768 (2d Cir. 1995) (affirming dismissal of tortious interference with business relations claim because plaintiffs made no allegations that defendants had any contact or intentionally interfered with plaintiffs' customers); *Armored Group*, 2009 WL 1110783, at *3 (dismissing tortious interference with business relations claim where plaintiff alleged that

because of defendant's breach, plaintiff's relationship with its clients had been "irreparably damaged," but nowhere alleged that defendants directed any conduct at plaintiff's clients).

Third, Plaintiff has not sufficiently pleaded the third element, wrongful means. To satisfy the third element, Plaintiff must allege that Defendant committed a "crime or an independent tort," or applied economic pressure "for the sole purpose of inflicting intentional harm on [Plaintiff]." *Carvel*, 818 N.E.2d at 1103; *see also Catskill Dev.*, 547 F.3d at 132, 137 (same); *Learning Annex Holdings, L.L.C. v. Whitney Educ. Grp., Inc.*, 765 F. Supp. 2d 403, 412 (S.D.N.Y. 2011) (noting that no cause of action for tortious interference with business relations may survive where the defendant was "motivated by legitimate economic self-interest"). "Here, the Complaint alleges no criminal, tortious or other conduct by Defendant[] within the meaning of *Carvel* and its progeny. Rather, the crux of Plaintiff's allegations is that Defendant . . . breached an agreement [with Plaintiff]." *Armored Group*, 2009 WL 1110783, at *2. But, "[i]t is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987).

Thus, for these reasons the Court concludes that Plaintiff has not plausibly alleged a claim for tortious interference with business relations.

### 2. Tortious Interference with Contract

Plaintiff also alleges that Defendant tortiously interfered with Plaintiff's contracts with its customers. (Compl. ¶¶ 40-44.) Plaintiff states that it has "strong business relationship[s] with major companies," that include "agreements" as to the quantity of products that Plaintiff provides each month. (*Id.* ¶ 41.) Plaintiff alleges that Defendant cancelled the June Orders

"without justification," even though Defendant "knew that [Plaintiff] relied on the shipments so that it [could] redistribute the goods to its customer [sic] and knew that the cancellation of goods would cause [Plaintiff] to breach its agreement with its customers." (*Id.* ¶¶ 42-43.)  Plaintiff informed Defendant "that if deliveries were not made it would cause huge losses to [Plaintiff]'s business as all its customers were relying on the shipments." (*Id.* ¶ 22.)  Defendant moves to dismiss Plaintiff's claim, arguing that Plaintiff "has not alleged that any third party breached any contract, much less that [Defendant] intentionally caused such a breach, or even that [Defendant] knew about any specific contracts that [Plaintiff] had with any third parties." (Def.'s Mem. 5.)

 "Under New York law, the elements of tortious interference with contract are (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401-02 (2d Cir. 2006) (internal quotation marks omitted) (quoting *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1375 (N.Y. 1996)).

Plaintiff fails to allege several necessary elements of its tortious interference with contract claim.  First, Plaintiff has not plausibly alleged adequate details about a specific contract between itself and a third party, but merely has alleged that it has "agreements" with its customers.  This is insufficient. *See Bose v. Interclick, Inc.*, No. 10-CV-9183, 2011 WL 4343517, at *10-11 (S.D.N.Y. Aug. 17, 2011) (dismissing tortious interference with contract claim where plaintiff claimed generally that it had contracts with various parties, but did not give "facts regarding the terms of the contracts or the specific parties to the contracts"); *Ho Myung*

9

*Moolsan Co. v. Manitou Mineral Water, Inc.*, 665 F. Supp. 2d 239, 255 (S.D.N.Y. 2009)

(denying leave to amend tortious interference with contract claim that had been dismissed,

because plaintiffs alleged only that "defendants interfered with their customer contracts," but did

not "specify a single customer contract with which defendants interfered"); *Berman v. Sugo*

*LLC*, 580 F. Supp. 2d 191, 208 (S.D.N.Y. 2008) (dismissing claim that simply alleged that a

contractual relationship with a third party existed, but set forth no facts to allege the type of

contract, whether it was nonexclusive, and whether it was valid).

Second, Plaintiff has not sufficiently alleged that Defendant knew of these contracts, only

that Plaintiff told Defendant that the cancelled orders would mean that Plaintiff would breach

unspecified agreements with unidentified customers.  "Although a defendant need not be aware

of all the details of a contract, it must have actual knowledge of the specific contract."  *Medtech*

*Prods. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 796 (S.D.N.Y. 2008) (internal quotation marks

omitted); *see also Boehner v. Heise*, 734 F. Supp. 2d 389, 404-05 (S.D.N.Y. 2010) (granting

summary judgment, where plaintiffs failed to offer any evidence that defendants knew of any

contracts, but merely stated that defendants knew that plaintiffs sold to their customers the

product defendants allegedly failed to deliver).

Third, Plaintiff does not allege that Defendant took any actions toward third parties with

which Plaintiff had contracts.[3]  *See B & M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F.

Supp. 2d 474, 485 (S.D.N.Y. 2010) ("The defendant's interference must be direct: the defendant

---

[3] The only action towards a third party alleged in the Complaint is that Defendant
instructed CSX not to deliver the June Orders to Plaintiff.  (Compl. ¶ 19.)  Plaintiff does not
include this as part of its tortious interference claim, and in any case, Plaintiff has not alleged
that it had a contract with CSX.

must direct some activities towards the third party . . . .") (internal quotation marks omitted); *Boehner*, 734 F. Supp. 2d at 404 ("Plaintiffs must show Defendants' direct interference with a contract.  That is, Defendants must have directed some activities toward the customers whose contracts are alleged to have been breached."); *Lama*, 668 N.E.2d at 1376 (holding that tortious interference with contract claim was properly dismissed because plaintiff made no allegation that defendant intentionally procured third-party's breach of its contract with plaintiff).

Fourth, Plaintiff does not allege that any third party breached its contract, but instead alleges that *Plaintiff* breached its contracts with third parties as a result of Defendant's alleged breach of its contract with Plaintiff.  Such an allegation is insufficient.  *See Berman*, 580 F. Supp. 2d at 208 (dismissing counterclaim which only stated that defendant "lost the contract" with a third party, where defendant did not allege that the *third party* breached the contract); *see also Lama*, 668 N.E.2d at 1376 (noting that tortious interference with contract claim was deficient because plaintiff did not allege that the defendant "intentionally procured [the third party]'s breach of its contract with [plaintiff]," or that the third party breached its contract with plaintiff).

Because these deficiencies are fatal to Plaintiff's claim of tortious interference with contract, the Court grants Defendant's motion to dismiss this cause of action.  *See Dune Deck Owners Corp. v. Liggett*, 927 N.Y.S.2d 125, 128 (App. Div. 2011) (dismissing tortious interference with contract claim where "plaintiff failed to plead the existence of a valid contract between the plaintiff and a third party, and that the defendant intentionally procured the third party's breach of that contract without justification" (alterations and internal quotation marks omitted)).

## III. Conclusion

For the foregoing reasons, the Motion to Dismiss is granted, and Plaintiff's tortious interference with contract and business relations claims are dismissed without prejudice. The Clerk of the Court is respectfully requested to terminate the pending motion. (Dkt. No. 20.)


SO ORDERED.

Dated: March 2 , 2012
       White Plains, New York

                                 KENNETH M. KARAS
                                 UNITED STATES DISTRICT COURT

Service list (via ECF):

Ryan Scott Karben
Law Office of Ryan Scott Karben
1 Melaney Dr
Monsey, NY 10952
(914)-536-4402
Fax: (845)-503-2193
Email: ryankarben@gmail.com
Counsel for Plaintiff

James F. Murphy
Jeffrey Michael Pincus
Lewis Johs Avallone Aviles, LLP
425 Broad Hollow Road
Melville, NY 11747
(631) 755-0101
Fax: (516) 755-0117
Email: jfmurphy@lewisjohs.com
          jmpincus@lewisjohs.com
Counsel for Defendant